**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **In Re:** | **CASE NO. 25-21754-JRS** |
| **SOUTHERN TREE PROFESSIONALS, LLC,** | **CHAPTER 11** |
| **Debtor.** | |

# PLAN OF LIQUIDATION PROPOSED BY SOUTHERN TREE PROFESSIONALS, LLC.

**October 8, 2026**

**ROUNTREE LEITMAN KLEIN & GEER, LLC**
Ceci Christy
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
***Counsel for Debtor***

**NO MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS APPROVED BY THE BANKRUPTCY COURT HAVE BEEN AUTHORIZED FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

## ARTICLE I. INTRODUCTION

Southern Tree Professionals, LLC, Debtor and Debtor-in-Possession ("**Debtor**") in the above-captioned bankruptcy case, hereby proposes and files the following Plan of Liquidation. This Plan is a plan of liquidation and not a plan of reorganization. Debtor has determined that it cannot reorganize. Under this Plan, Debtor will surrender all of its equipment and vehicles to the Holders of the Secured Claims that encumber them, which surrender began on October 1, 2026 and shall be completed no later than the Effective Date; will collect its Accounts Receivable during the AR Collection Period; will pay from Available Cash, in the following order, the fees of the Office of the United States Trustee and Allowed Administrative Claims, the Libertas Secured Claim, and Allowed Priority Tax Claims and Priority Claims; will distribute any remaining Available Cash to Holders of Allowed General Unsecured Claims on a Pro Rata basis; and will then dissolve. No person has guaranteed any payment under this Plan. This Plan should be considered in conjunction with the related Disclosure Statement.

## ARTICLE II. DEFINITIONS AND RULES OF INTERPRETATION

**Section 2.01** ***Scope of Definitions and Rules of Interpretation***. For purposes of the Plan, all capitalized terms not otherwise defined herein shall have the meanings ascribed to them in this Article II of the Plan. Any term used in the Plan that is not defined herein but is otherwise defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The rights and obligations arising under the Plan shall be interpreted, governed by, and construed and enforced in accordance with the laws of the State of Georgia (without regard to the conflict of law principles thereof), the Bankruptcy Code, and the Bankruptcy Rules, as appropriate.

**Section 2.02** ***Accounts Receivable*** shall mean all accounts, accounts receivable, payment intangibles, contract rights and other rights to payment owing to Debtor for services performed or goods sold, whether arising before or after the Petition Date, together with all proceeds thereof.

**Section 2.03** ***Administrative Claim*** shall mean an Allowed Claim for payment of an administrative expense of a kind specified in § 503(b) of the Bankruptcy Code and entitled to priority payment pursuant to § 507(a) of the Bankruptcy Code, including (a) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses approved, awarded or allowed under §§ 330(a) or 331 of the Bankruptcy Code; (c) the post-Effective Date costs and expenses of administering the Estate; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

**Section 2.04** ***Administrative Claims Bar Date*** means the first Business Day that is at least 10 days after the Effective Date.

**Section 2.05** ***Allowed Claim*** shall have the meaning set forth in Section 9.01 of this Plan.

**Section 2.06** ***AR Collection Period*** shall mean the period beginning on the Effective Date and ending six (6) months thereafter, during which time the Liquidating Debtor shall use commercially

reasonable efforts to collect the Accounts Receivable. The AR Collection Period may be extended by order of the Bankruptcy Court for cause shown upon motion filed before it expires.

**Section 2.07** ***Assets*** shall mean all property of Debtor and the Estate as defined in § 541 of the Bankruptcy Code, including without limitation all right, title, and interest in and to any Avoidance Actions or other Causes of Action that Debtor or the Estate may have as of the Effective Date or any time thereafter.

**Section 2.08** ***Available Cash*** shall mean all Cash held by the Liquidating Debtor on and after the Effective Date, including the Net AR Proceeds and the proceeds of any Causes of Action, net of the reasonable and necessary costs of collection and of administering this Plan.

**Section 2.09** ***Avoidance Actions*** shall mean any actions, causes of action, claims, demands, suits, or rights, created or arising in favor of Debtor or its Estate under the Bankruptcy Code, including all claims, rights and causes of action arising under § 510 or under any of §§ 542 through 553 of the Bankruptcy Code, in each case regardless of whether such actions, causes of action, claims, demands, suits or rights are commenced prior to or after the Effective Date.

**Section 2.10** ***Ballot*** shall mean each of the voting forms that will be distributed by Order of the Bankruptcy Court to Holders of Claims in Classes that are impaired and entitled to vote under the Plan.

**Section 2.11** ***Bankruptcy Case*** shall mean the Chapter 11 bankruptcy case of Debtor now pending before the Bankruptcy Court.

**Section 2.12** ***Bankruptcy Code*** shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended and applicable to this Bankruptcy Case.

**Section 2.13** ***Bankruptcy Court*** shall mean the United States Bankruptcy Court for the Northern District of Georgia or, in the event such Bankruptcy Court ceases to exercise jurisdiction over the Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case in lieu of the United States Bankruptcy Court for the Northern District of Georgia.

**Section 2.14** ***Bankruptcy Rules*** shall mean: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, (b) the Federal Rules of Civil Procedure, and (c) the Local Rules of the Bankruptcy Court, all as amended from time to time and as applicable to this Bankruptcy Case or proceedings therein.

**Section 2.15** ***Bar Date*** shall mean the last date set by the Bankruptcy Court to file proofs of claim asserting a pre-petition claim, which date was February 9, 2026 for non-government proofs of claim and June 3, 2026 for government proofs of claim.

**Section 2.16** ***Business Day*** shall mean any day, excluding Saturdays, Sundays, and legal holidays, on which commercial banks are open for business in Gainesville, Georgia.

**Section 2.17** ***Cash*** shall mean legal tender of the United States of America, or a check entitling the holder to immediate payment thereof.

**Section 2.18** ***Causes of Action*** shall mean any and all of Debtor's and the Estate's claims, causes of action, suits, proceedings, liabilities, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, torts, penalties, statutory violations, agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments, whether asserted or unasserted, liquidated or unliquidated, based on any act or omission or other event occurring prior to the Effective Date, including Avoidance Actions, and any claims acquired following the Petition Date, including without limitation any such Causes of Action described in the Disclosure Statement.

**Section 2.19** ***Claim*** shall mean a claim against Debtor or its Estate, as defined in § 101(5) of the Bankruptcy Code.

**Section 2.20** ***Claiming Period*** shall mean a period of the later of one year following the first Distribution to a Class of Claims or 180 days after a Distribution is made to a claimant on account of which Unclaimed Property first results.

**Section 2.21** ***Claims Litigation*** shall mean any and all litigation or proceedings arising out of objections to Claims asserted against the Estate, or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estate.

**Section 2.22** ***Claims Objection Deadline*** shall mean the first Business Day that is at least 30 days after the Effective Date.

**Section 2.23** ***Class*** shall mean any class into which Claims or Equity Interests are classified under this Plan.

**Section 2.24** ***Confirmation Date*** shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**Section 2.25** ***Confirmation Hearing*** shall mean the hearing on confirmation of the Plan, held pursuant to § 1128 of the Bankruptcy Code.

**Section 2.26** ***Confirmation Order*** shall mean the Order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**Section 2.27** ***Debtor*** shall mean Southern Tree Professionals, LLC prior to the Effective Date.

**Section 2.28** ***Deficiency Claim*** shall mean the Allowed Claim of any secured creditor to the extent that such claim is not a Secured Claim, which shall be treated as a General Unsecured Claim. The Deficiency Claim of each Equipment Lender is fixed in the amount set forth for its Class in Article IV of this Plan.

**Section 2.29** ***Disallowed Claim*** shall have the meaning set forth in Section 9.02 of this Plan.

**Section 2.30** ***Disbursing Agent*** shall mean the Liquidating Debtor or Debtor's bankruptcy counsel, the law firm of Rountree Leitman Klein & Geer, LLC, as Liquidating Debtor may designate.

**Section 2.31** ***Disputed Claim*** shall have the meaning set forth in Section 9.03 of this Plan.

**Section 2.32** ***Dissolution*** shall mean the dissolution and winding up of Debtor under the Georgia Limited Liability Company Act following the Final Distribution, as provided in Article V of this Plan.

**Section 2.33** ***Distribution*** shall mean a distribution or payment under the Plan to the Holders of Allowed Claims. ***Final Distribution*** shall mean the last payment under the Plan to the Holders of Allowed Claims.

**Section 2.34** ***Effective Date*** shall mean the first Business Day after the Confirmation Order has become a Final Order.

**Section 2.35** ***Equipment Lenders*** shall mean collectively creditors who have claims secured by equipment or vehicles purchased by or leased to Debtor and the claim is not secured by any other collateral. The equipment and vehicles securing the Claims of the Equipment Lenders are referred to collectively as the ***Collateral***.

**Section 2.36** ***Equity Interests*** shall mean the interests of the members of Debtor and Liquidating Debtor.

**Section 2.37** ***Estate*** shall mean the bankruptcy estate created by the commencement of the Bankruptcy Case, both prior to and following the Confirmation Date.

**Section 2.38** ***Final Order*** shall mean an order or judgment, the operation or effect of which has not been stayed, reversed, modified, or amended and as to which order or judgment the time to appeal, petition for certiorari, or seek re-argument, review or rehearing has expired and as to which no notice of appeal, petition for certiorari, or motion for re-argument, review or rehearing was timely filed or, if timely filed, the order or judgment has been affirmed by the highest court to which the order or judgment was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further re-argument or rehearing has expired.

**Section 2.39** ***General Unsecured Claim*** shall mean an Allowed Claim that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Priority Tax Claim, and is not otherwise separately classified.

**Section 2.40** ***Holder*** means the person or entity with legal standing to assert rights based on a Claim or Equity Interest, as applicable.

**Section 2.41** ***Impaired*** has the meaning ascribed to it in § 1124 of the Bankruptcy Code.

**Section 2.42** ***Insider*** shall have the meaning set forth in § 101(31) of the Bankruptcy Code.

**Section 2.43** ***Liquidating Debtor*** shall mean Southern Tree Professionals, LLC on and after the Effective Date, in its capacity as the entity charged under this Plan with surrendering the Collateral, collecting the Accounts Receivable, making Distributions, and thereafter winding up and dissolving.

**Section 2.44** ***Net AR Proceeds*** shall mean the gross proceeds of the Accounts Receivable collected during the AR Collection Period, less the reasonable and necessary costs of collection, including any fees of collection counsel or agents approved by the Bankruptcy Court.

**Section 2.45** ***Petition Date*** shall mean December 5, 2025, the date on which Debtor filed its Chapter 11 petition, commencing this Bankruptcy Case.

**Section 2.46** ***Plan*** shall mean this Plan of Liquidation, as it may be modified or amended from time to time pursuant to § 1127 of the Bankruptcy Code.

**Section 2.47** ***Priority Claim*** shall mean an Allowed Claim entitled to priority pursuant to §§ 507(a)(2) through and including 507(a)(10) of the Bankruptcy Code, but not including Administrative Claims, Professional Claims, or Priority Tax Claims.

**Section 2.48** ***Priority Tax Claim*** shall mean an Allowed Claim entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

**Section 2.49** ***Pro Rata Share*** shall mean, as to a particular Holder of a General Unsecured Claim in Class 36, the ratio that the amount of such Claim held by such Holder bears to the aggregate amount of all General Unsecured Claims in Class 36. Such ratio shall be calculated as if all Disputed General Unsecured Claims asserted against Debtor are Allowed Claims as of the Effective Date, unless specifically provided otherwise by the Plan.

**Section 2.50** ***Professional Claim*** shall mean any Claim based on professional fees held by any party retained pursuant to §§ 327–330 of the Bankruptcy Code.

**Section 2.51** ***Record Date*** means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other Final Order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date. The Record Date shall not be later than the Confirmation Date.

**Section 2.52** ***Record Holder*** means the Holder of a Claim as of the Record Date.

**Section 2.53** ***Scheduled*** shall mean, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest, as set forth in Debtor's Schedules, as amended.

**Section 2.54** ***Schedules*** shall mean the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, filed on or about December 30, 2025 [Doc. No. 34], and as amended from time to time in this Bankruptcy Case.

**Section 2.55** ***Secured Claim*** shall mean an Allowed Claim secured by a lien on property of the Estate to the extent of the value, as of the Confirmation Date, of such lien as measured by the fair market value of the collateral as appraised by Debtor's appraiser, Bullseye Auctions (or, for any item of Collateral not appraised, as estimated by Debtor in the Disclosure Statement), or by a Final Order of the Bankruptcy Court pursuant to § 506 of the Bankruptcy Code or as otherwise agreed in writing by the Debtor and the Holder of such Allowed Claim.

**Section 2.56** ***Subordinated General Unsecured Claim*** means (i) any Claim, or portion thereof, which is subordinated to the payment of all other General Unsecured Claims (other than Claims which are themselves Subordinated General Unsecured Claims) pursuant to § 510 of the Bankruptcy Code, any other applicable law, any order of the Bankruptcy Court or any applicable agreement, or (ii) any Claim for any fine, penalty, or forfeiture, or for multiple, exemplary or punitive damages, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

**Section 2.57** ***Surrender Date*** shall mean, as to any item of Collateral, the date on which Debtor surrenders possession of that Collateral to the Holder of the Secured Claim it secures, which surrender began on October 1, 2026 and shall be completed in all events no later than the Effective Date.

**Section 2.58** ***Unclaimed Property*** means any funds payable to Holders of Claims which are unclaimed.

**Section 2.59** ***Unimpaired*** means, with respect to a Class of Claims or Equity Interests, any Class that is not Impaired.

**Section 2.60** ***Unsecured Claim*** means an Allowed Claim held by a creditor of Debtor, which is not secured by an interest in any of the property of Debtor's Estate and any allowed deficiency claim held by any Classes 1-34 Equipment Lender.

## Article III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 3.01 Introduction**.

(a) All Claims and Equity Interests in the Bankruptcy Case are classified in the Classes below. Notwithstanding any other provision of the Plan, a Claim in a particular Class is entitled to receive Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date.

(b) Under the provisions of § 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in §§ 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code (administrative expenses, "gap" claims, and tax claims) may not be designated by Debtor as being in particular classes. Notwithstanding this prohibition of classification, these Claims are nevertheless treated in Article IV of this Plan.

**Section 3.02 Classification**. Claims and Equity Interests are classified as follows:

3.2.1 Class 1 shall consist of the secured claim of Alliance Funding Group ("**Alliance**").

3.2.2 Class 2 shall consist of the secured claim of Ally Bank ("**Ally**").

3.2.3 Class 3 shall consist of the secured claim of AmeriCredit Financial Services, Inc. ("**AmeriCredit**").

3.2.4 Class 4 shall consist of the secured claim of Amur ("**Amur**").

3.2.5 Class 5 shall consist of the secured claim of AP Equipment Finance ("**AP**").

3.2.6 Class 6 shall consist of the secured claim of Banc of America Leasing and Capital LLC ("**Banc Am**").

3.2.7 Class 7 shall consist of the secured claim of BMO Bank ("**BMO**").

3.2.8 Class 8 shall consist of the secured claim of Caterpillar Financial ("**Caterpillar**").

3.2.9 Class 9 shall consist of the secured claim of Dakota Bank ("**Dakota**").

3.2.10 Class 10 shall consist of the secured claim of De Lage Landen Financial Services, Inc. ("**DLL**").

3.2.11 Class 11 shall consist of the secured claim of Financial Pacific ("**FinPac**").

3.2.12 Class 12 shall consist of the secured claim of FinWise Bank ("**FinWise**").

3.2.13 Class 13 shall consist of the secured claim of First Business Specialty Finance, LLC **("First Business")**.

3.2.14 Class 14 shall consist of the secured claim of First Citizens Bank and Trust ("**First Citizens**").

3.2.15 Class 15 shall consist of the secured claim of FNB Equipment Finance ("**FNB**").

3.2.16 Class 16 shall consist of the secured claim of Hanmi Bank ("**Hanmi**").

3.2.17 Class 17 shall consist of the secured claim of Horizon Bank ("**Horizon**").

3.2.18 Class 18 shall consist of the secured claim of Huntington National Bank ("**Huntington**").

3.2.19 Class 19 shall consist of the secured claim of MHC ("**MHC**").

3.2.20 Class 20 shall consist of the secured claim of Mitsubishi HC Capital ("**Mitsubishi**").

3.2.21 Class 21 shall consist of the secured claim of Navitas ("**Navitas**").

3.2.22 Class 22 shall consist of the secured claim of North Mill Credit Trust ("**North Mill**").

3.2.23 Class 23 shall consist of the secured claim of Northland Capital ("**Northland**").

3.2.24 Class 24 shall consist of the secured claim of Old National Equipment Finance ("**Old National**").

3.2.25 Class 25 shall consist of the secured claim of Paccar ("**Paccar**").

3.2.26 Class 26 shall consist of the secured claim of Pawnee Leasing Corp. ("**Pawnee**").

3.2.27 Class 27 shall consist of the secured claim of Stearns Bank ("**Stearns**").

3.2.28 Class 28 shall consist of the secured claim of Sumitomo Mitsui Finance and Leasing Company Ltd, ("**Sumitomo**").

3.2.29 Class 29 shall consist of the secured claim of Toyota Industries Commercial Finance ("**Toyota**").

3.2.30 Class 30 shall consist of the secured claim of Unifi Equipment Finance ("**Unifi**").

3.2.31 Class 31 shall consist of the secured claim of Wells Fargo Bank ("**Wells Fargo**").

3.2.32 Class 32 shall consist of the secured claim of WF Vendor Finance ("**WF Vendor**").

3.2.33 Class 33 shall consist of the secured claim of Wintrust Specialty Finance ("**Wintrust**").

3.2.34 Class 34 shall consist of the secured claim of Zaxis Financial Services Americas LLC ("**Zaxis**").

3.2.35 Class 35 shall consist of the secured claim of Libertas Funding ("**Libertas**").

3.2.36 Class 36 shall consist of General Unsecured Claims ("**GUCs**").

3.2.37 Class 37 shall consist of Equity Holders ("**Equity Holders**").

## ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS

The classes, the treatment of each Class, and the voting rights of each Class are set forth below.

**Section 4.01 Administrative Claims**. Unless paid in the ordinary course of business, pursuant to an order of the Bankruptcy Court, or separately classified, and except as may otherwise be agreed between the Debtor and the Holder of an Administrative Claim, the Liquidating Debtor will pay all Administrative Claims that are Allowed Claims as of the Effective Date in Cash in

full, after payment of the fees of the Office of the United States Trustee and in the order of priority set forth in Section 5.06 of this Plan, on the Effective Date or as soon thereafter as is reasonably practicable. Subsequent to the Effective Date, the Liquidating Debtor may pay each Administrative Claim that becomes an Allowed Claim following the Effective Date if Available Cash remains available to pay the Allowed Claim. Debtor estimates that Allowed Administrative Claims will total approximately $104,979.86, consisting of the Professional Claim of Rountree Leitman Klein & Geer, LLC of approximately $45,000.00 and the Administrative Claim of Great Lakes Petroleum Company of $59,979.86, and that fees of the Office of the United States Trustee will total approximately $70,000.00. Administrative Claims are not classified and are not entitled to vote on the Plan.

**Section 4.02 Priority Tax Claims**.

Priority Tax Claims are not classified under this Plan. Except to the extent the Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall be paid the Allowed amount of its Claim in Cash from Available Cash in the order of priority set forth in Section 5.06 of this Plan, and in all events in a manner consistent with § 1129(a)(9)(C) of the Bankruptcy Code. Allowed Priority Tax Claims shall be paid before any Distribution to Holders of Class 36 General Unsecured Claims.

**Section 4.03 Priority Claims**.

There are no Priority Claims in this Bankruptcy Case. If a creditor files a proof of claim asserting a priority claim, then, except to the extent the Holder agrees to less favorable treatment, such Claim, to the extent it is an Allowed Priority Claim, shall be paid in full in Cash from Available Cash in the order of priority set forth in Section 5.06 of this Plan, and in all events in a manner consistent with § 1129(a)(9)(B) of the Bankruptcy Code, before any Distribution to Holders of Class 36 General Unsecured Claims.

**Section 4.04 Creditor Claims**.

As used in this Article IV, the "Secured Class [number] Claim" of any Class means the Allowed Secured Claim (or, where a Class includes more than one Claim, all of the Allowed Secured Claims) of the Holder of the Claims in that Class. Notwithstanding any other statement in this Article IV, the Secured Class [number] Claim of each Equipment Lender shall not exceed the fair market value of its Collateral, and the balance of its Claim shall be its Deficiency Claim in the amount stated for its Class.

**4.1 Class 1: Secured Claim of Alliance:**

Class 1 shall consist of the Secured Claim of Alliance based on Claim 4.

Alliance filed a proof of claim for $295,948.92. This claim is based on a lease between Alliance and Debtor. To secure its claim, Alliance asserts first priority lien upon and security interest in one (1) Kobelco SK210LC-11 Crawler Excavator SN 0932 (the "**Class 1 Collateral**").

Debtor shall surrender the Class 1 Collateral to Alliance no later than the Effective Date. Alliance shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Alliance shall have an Allowed Class 36 General Unsecured Claim in the amount of $203,698.92 (the "Class 1 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 1 Collateral, as set forth in the Disclosure Statement. Alliance shall not be required to file an amended proof of claim, and the Class 1 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 1 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 1 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Alliance under this Plan on account of the Secured Class 1 Claim.

Class 1 is Impaired and entitled to vote on the Plan.

**4.2 Class 2: Secured Claim of Ally:**

Class 2 shall consist of the Secured Claims of Ally based on Claim 10 and Claim 77.

Ally filed a proof of claim, Claim 10, for $60,160.16. To secure its claim, Ally asserts first priority lien upon and security interest in one (1) 2024 Chevrolet Silverado 3500HD with VIN 4040 (the "**Class 2(a) Collateral**"). Debtor values Ally's secured claim at $41,150.00 (the "**Secured Class 2(a) Claim**").

Ally filed a second proof of claim, Claim 77, for $65,055.57. To secure its claim, Ally asserts first priority lien upon and security interest in one (1) 2021 Chevrolet Silverado 3500HD with VIN 1272 (the "**Class 2(b) Collateral**"). Debtor values Ally's secured claim at $47,225.00 (the "**Secured Class 2(b) Claim**").

Debtor shall surrender the Class 2(a) Collateral, and the Class 2(b) Collateral (collectively, the "Class 2 Collateral") to Ally no later than the Effective Date. Ally shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Ally shall have an Allowed Class 36 General Unsecured Claim in the amount of $36,840.73 (the "Class 2 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 2 Collateral, as set forth in the Disclosure Statement. Ally shall not be required to file an amended proof of claim, and the Class 2 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 2 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 2 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Ally under this Plan on account of the Secured Class 2 Claim.

Class 2 is Impaired and entitled to vote on the Plan.

**4.3 Class 3: Secured Claim of AmeriCredit:**

Class 3 shall consist of the Secured Claim of AmeriCredit based on Claim 7.

AmeriCredit filed a proof of claim for $58,879.25 (the "**Secured Class 3 Claim**"). To secure its claim, AmeriCredit asserts first priority lien upon and security interest in one (1) 2021 Chevrolet Silverado 2500HD with VIN 2576 (the "**Class 3 Collateral**").

Debtor shall surrender the Class 3 Collateral to AmeriCredit no later than the Effective Date. AmeriCredit shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. AmeriCredit shall have an Allowed Class 36 General Unsecured Claim in the amount of $5,979.25 (the "Class 3 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 3 Collateral, as set forth in the Disclosure Statement. AmeriCredit shall not be required to file an amended proof of claim, and the Class 3 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 3 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 3 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to AmeriCredit under this Plan on account of the Secured Class 3 Claim.

Class 3 is Impaired and entitled to vote on the Plan.

**4.4 Class 4: Secured Claim of Amur:**

Class 4 shall consist of the Secured Claim of Amur based on Claim 8.

Amur filed a proof of claim for $128,476.52. To secure its claim, Amur asserts first priority lien upon and security interest in one (1) Country Boy Trailer Diamond C Trailer with VIN 291863, one (1) 2023 Peerless Chipper Trailer with VIN 64822, and two (2) 2025 Fryfogle Trailers with VINs 494077 and 494081 (the "**Class 4 Collateral**"). Debtor values Amur's secured claim at $66,000.00 (the "**Secured Class 4 Claim**").

Debtor shall surrender the Class 4 Collateral to Amur no later than the Effective Date. Amur shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Amur shall have an Allowed Class 36 General Unsecured Claim in the amount of $62,476.52 (the "Class 4 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 4 Collateral, as set forth in the Disclosure Statement. Amur shall not be required to file an amended proof of claim, and the Class 4 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 4 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 4 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Amur under this Plan on account of the Secured Class 4 Claim.

Class 4 is Impaired and entitled to vote on the Plan.

**4.5 Class 5: Secured Claim of AP:**

Class 5 shall consist of the Secured Claim of AP based on Claim 22.

AP filed a proof of claim for $263,640.01. To secure its claim, AP asserts first priority lien upon and security interest in one (1) 2026 Kenworth W9 Series (the "**Class 5 Collateral**"). Debtor values AP's secured claim at $248,900.00 (the "**Secured Class 5 Claim**").

Debtor shall surrender the Class 5 Collateral to AP no later than the Effective Date. AP shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. AP shall have an Allowed Class 36 General Unsecured Claim in the amount of $14,740.01 (the "Class 5 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 5 Collateral, as set forth in the Disclosure Statement. AP shall not be required to file an amended proof of claim, and the Class 5 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 5 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 5 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to AP under this Plan on account of the Secured Class 5 Claim.

Class 5 is Impaired and entitled to vote on the Plan.

**4.6 Class 6: Secured Claim of Banc Am:**

Class 6 shall consist of the Secured Claim of Banc Am based on Claim 78.

Banc Am filed a proof of claim for $67,740.88. To secure its claim, Banc Am asserts first priority lien upon and security interest in one (1) 2023 Westtech Woodcracker C550 (the "**Class 6 Collateral**").

Debtor shall surrender the Class 6 Collateral to Banc Am no later than the Effective Date. Banc Am shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Because the fair market value of the Class 6 Collateral equals or exceeds the Allowed Claim of Banc Am, Banc Am shall have no Deficiency Claim and no Class 36 General Unsecured Claim. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 6 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Banc Am under this Plan on account of the Secured Class 6 Claim.

Class 6 is Impaired and entitled to vote on the Plan.

**4.7 Class 7: Secured Claims of BMO:**

Class 7 shall consist of the Secured Claims of BMO based on Claim 14, Claim 15, and Claim 27.

BMO filed proof of Claim 14 for $94,224.73. To secure its claim, BMO asserts first priority lien upon and security interest in one (1) 2025 Takeuchi Track Loader TL12 R2-CRHR with SN 8733 (the "**Class 7(a) Collateral**").

BMO filed a second proof of claim, Claim 15, for $151,710.65. To secure its claim, BMO asserts first priority lien upon and security interest in one (1) 2025 Takeuchi Track Loader TL12 R2-CRHR with SN 8703 (the "**Class 7(b) Collateral**").

BMO filed proof of Claim 27 for $238,877.49. To secure its claim, BMO asserts first priority lien upon and security interest in one (1) 2025 Kenworth W900 with VIN 156809 (the "**Class 7(c) Collateral**"). Debtor values BMO's secured claim at $158,920.00 (the "**Secured Class 7(c) Claim**").

Debtor shall surrender the Class 7(a) Collateral, the Class 7(b) Collateral, and the Class 7(c) Collateral (collectively, the "Class 7 Collateral") to BMO no later than the Effective Date. BMO shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. BMO shall have an Allowed Class 36 General Unsecured Claim in the amount of $221,002.87 (the "Class 7 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 7 Collateral, as set forth in the Disclosure Statement. BMO shall not be required to file an amended proof of claim, and the Class 7 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 7 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 7 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to BMO under this Plan on account of the Secured Class 7 Claim.

Class 7 is Impaired and entitled to vote on the Plan.

**4.8 Class 8: Secured Claims of Caterpillar:**

Class 8 shall consist of the Secured Claims of Caterpillar based on Claim 40, Claim 41, Claim 42, Claim 43, and Claim 44.

Caterpillar filed proof of Claim 40 for $106,536.28. To secure its claim, Caterpillar asserts a first priority lien upon and security interest in one (1) 2021 Caterpillar 953K Track Loader with SN 0734 (the "**Class 8(a) Collateral**"). Debtor values Caterpillar's secured claim at $106,536.28 (the "**Secured Class 8(a) Claim**").

Caterpillar filed a second proof of claim, Claim 41, for $254,194.00. To secure its claim, Caterpillar asserts first priority lien upon and security interest in one (1) CAT D6TLGP Crawler Dozer with VIN 0624 (the "**Class 8(b) Collateral**"). Debtor values Caterpillar's secured claim at $254,194.00 (the "**Secured Class 8(b) Claim**").

Caterpillar filed a third proof of claim, Claim 42, for $488,038.34. To secure its claim, Caterpillar asserts first priority lien upon and security interest in one (1) CAT 963 Crawler Loader

with VIN 1255 and one (1) 2025 Rockland Grapple with SN 1889 (the "**Class 8(c) Collateral**"). Debtor values Caterpillar's secured claim at $367,750.00 (the "**Secured Class 8(c) Claim**").

Caterpillar filed a fourth proof of claim, Claim 43, for $379,858.89. To secure its claim, Caterpillar asserts first priority lien upon and security interest in one (1) 2018 Caterpillar D8T Track Tractor with VIN 1672 (the "**Class 8(d) Collateral**"). Debtor values Caterpillar's secured claim at $365,000.00 (the "**Secured Class 8(d) Claim**").

Caterpillar filed a fifth proof of claim, Claim 44, for $162,774.47. To secure its claim, Caterpillar asserts first priority lien upon and security interest in one (1) 2018 Caterpillar D6N LGP with VIN 0422 (the "**Class 8(e) Collateral**"). Debtor values Caterpillar's secured claim at $129,900.00 (the "**Secured Class 8(e) Claim**").

Debtor shall surrender the Class 8(a) Collateral, the Class 8(b) Collateral, the Class 8(c) Collateral, the Class 8(d) Collateral, and the Class 8(e) Collateral (collectively, the "Class 8 Collateral") to Caterpillar no later than the Effective Date. Caterpillar shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Caterpillar shall have an Allowed Class 36 General Unsecured Claim in the amount of $168,021.70 (the "Class 8 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 8 Collateral, as set forth in the Disclosure Statement. Caterpillar shall not be required to file an amended proof of claim, and the Class 8 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 8 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 8 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Caterpillar under this Plan on account of the Secured Class 8 Claim.

Class 8 is Impaired and entitled to vote on the Plan.

**4.9 Class 9: Secured Claim of Dakota:**

Class 9 shall consist of the Secured Claim of Dakota based on Claim 56.

Dakota filed a proof of claim for $1,386,382.20 based upon a lease. Debtor asserts that the lease is a financing agreement and is a loan. Dakota is holding a $450,000.00 deposit paid by Debtor at the time it executed the agreement. Applying the $450,000 to Dakota's claim reduces it to $936,382.20.

To secure its claim, Dakota asserts first priority lien upon and security interest in one (1) 2024 Terex CBI Magnum Force 6800CT Horizontal Grinder (the "**Class 9 Collateral**"). Debtor values Dakota's secured claim at $936,382.20 (the "**Secured Class 9 Claim**").

Debtor shall surrender the Class 9 Collateral to Dakota no later than the Effective Date. Dakota shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to

permit such disposition. Because the fair market value of the Class 9 Collateral equals or exceeds the Allowed Claim of Dakota, Dakota shall have no Deficiency Claim and no Class 36 General Unsecured Claim. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 9 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Dakota under this Plan on account of the Secured Class 9 Claim.

Class 9 is Impaired and entitled to vote on the Plan.

**4.10 Class 10: Secured Claim of DLL:**

Class 10 shall consist of the Secured Claim of DLL based on Claims 65, 66, and 68.

DLL filed proof of Claim 66 for $304,929.11. To secure its claim, DLL asserts first priority lien upon and security interest in one (1) Vector 616 Colormax with SN 616CM103 (the "**Class 10(a) Collateral**"). Debtor values DLL's secured claim at $225,000.00 (the "**Secured Class 10(a) Claim**").

DLL filed proof of Claim 65 for $121,875.00. To secure its claim, DLL asserts first priority lien upon and security interest in one (1) 2024 Vermeer AX17 Chipper with SN 0181 (the "**Class 10(b) Collateral**"). Debtor values DLL's secured claim at $95,000.00 (the "**Secured Class 10(b) Claim**").

DLL filed proof of Claim 68 for $65,171.06. To secure its claim, DLL asserts first priority lien upon and security interest in one (1) 2026 Vermeer ML150 with SN 0119 (the "**Class 10(c) Collateral**"). Debtor values DLL's secured claim at $65,171.06 (the "**Secured Class 10(c) Claim**").

Debtor shall surrender the Class 10(a) Collateral, the Class 10(b) Collateral, and the Class 10(c) Collateral (collectively, the "Class 10 Collateral") to DLL no later than the Effective Date. DLL shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. DLL shall have an Allowed Class 36 General Unsecured Claim in the amount of $106,804.11 (the "Class 10 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 10 Collateral, as set forth in the Disclosure Statement. DLL shall not be required to file an amended proof of claim, and the Class 10 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 10 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 10 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to DLL under this Plan on account of the Secured Class 10 Claim.

Class 10 is Impaired and entitled to vote on the Plan.

**4.11 Class 11: Secured Claims of FinPac:**

Class 11 shall consist of the Secured Claims of FinPac based on Claim 47 and Claim 48.

FinPac filed proof of Claim 47 for $151,991.07. To secure its claim, FinPac asserts first priority lien upon and security interest in one (1) 2024 Kenworth T280 AeroTruck (the "**Class 11(a) Collateral**").

FinPac filed a second proof of claim, Claim 48, for $216,155.04. To secure its claim, FinPac asserts first priority lien upon and security interest in one (1) Bandit Intimidator 20XP (the "**Class 11(b) Collateral**"). Debtor values FinPac's secured claim at $89,250.00 (the "**Secured Class 11(b) Claim**").

Debtor shall surrender the Class 11(a) Collateral, and the Class 11(b) Collateral (collectively, the "Class 11 Collateral") to FinPac no later than the Effective Date. FinPac shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. FinPac shall have an Allowed Class 36 General Unsecured Claim in the amount of $206,476.11 (the "Class 11 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 11 Collateral, as set forth in the Disclosure Statement. FinPac shall not be required to file an amended proof of claim, and the Class 11 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 11 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 11 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to FinPac under this Plan on account of the Secured Class 11 Claim.

Class 11 is Impaired and entitled to vote on the Plan.

**4.12 Class 12: Secured Claim of FinWise:**

Class 12 shall consist of the Secured Claim of FinWise based on Claim 54.

FinWise filed a proof of claim for $71,988.62. To secure its claim, FinWise asserts first priority lien upon and security interest in one (1) Shearex Harvester Shears FHS30 with SN 0002 (the "**Class 12 Collateral**"). Debtor values FinWise's secured claim at $5,750.00 (the "**Secured Class 12 Claim**").

Debtor shall surrender the Class 12 Collateral to FinWise no later than the Effective Date. FinWise shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. FinWise shall have an Allowed Class 36 General Unsecured Claim in the amount of $66,238.62 (the "Class 12 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 12 Collateral, as set forth in the Disclosure Statement. FinWise shall not be required to file an amended proof of claim, and the Class 12 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 12 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 12 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to FinWise under this Plan on account of the Secured Class 12 Claim.

Class 12 is Impaired and entitled to vote on the Plan.

**4.13 Class 13: Secured Claim of First Business:**

Class 13 shall consist of the Secured Claim of First Business based on Claim 99.

First Business filed a proof of claim for $198,587.95. To secure its claim, First Business asserts a first priority lien upon and security interest in one (1) Tigercat 630D Skidder with Allied Wrench with SN 6037 (the "**Class 13 Collateral**"). Debtor values First Business's secured claim at $84,600.00 (the "**Secured Class 13 Claim**").

Debtor shall surrender the Class 13 Collateral to First Business no later than the Effective Date. First Business shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. First Business shall have an Allowed Class 36 General Unsecured Claim in the amount of $113,987.95 (the "Class 13 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 13 Collateral, as set forth in the Disclosure Statement. First Business shall not be required to file an amended proof of claim, and the Class 13 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 13 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 13 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to First Business under this Plan on account of the Secured Class 13 Claim.

Class 13 is Impaired and entitled to vote on the Plan.

**4.14 Class 14: Secured Claims of First Citizens:**

Class 14 shall consist of the Secured Claims of First Citizens based on Claim 34, Claim 35, and Claim 36.

First Citizens filed a proof of claim, Claim 34, for $176,835.92 which is based upon a lease between Debtor and First Citizens (the "**Class 14(a) Claim**"). To secure its claim, First Citizens asserts first priority lien upon and security interest in one (1) 2022 Chevrolet Silverado 2500 with VIN 86621 and one (1) 2020 Chevrolet Silverado 2500 with VIN 29503 (the "**Class 14(a) Collateral**").

First Citizens filed a second proof of claim, Claim 35, for $34,280.15 which is based upon a lease between Debtor and First Citizens (the "**Class 14(b) Claim**"). To secure its claim, First Citizens asserts first priority lien upon and security interest in one (1) 2023 Chevrolet Silverado 1500 with VIN 29801 (the "**Class 14(b) Collateral**").

First Citizens filed a third proof of claim, Claim 36, for $78,513.93 (the "**Secured Class 14(c) Claim**"). To secure its claim, First Citizens asserts first priority lien upon and security interest in one (1) 2021 Chevrolet Silverado 4500HD with VIN 72242 (the "**Class 14(c) Collateral**").

Debtor shall surrender the Class 14(a) Collateral, the Class 14(b) Collateral, and the Class 14(c) Collateral (collectively, the "**Class 14 Collateral**") to First Citizens no later than the Effective Date. First Citizens shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. First Citizens shall have an Allowed Class 36 General Unsecured Claim in the amount of $162,130.00 (the "Class 14 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 14 Collateral, as set forth in the Disclosure Statement. First Citizens shall not be required to file an amended proof of claim, and the Class 14 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 14 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 14 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to First Citizens under this Plan on account of the Secured Class 14 Claim.

Class 14 is Impaired and entitled to vote on the Plan.

**4.15 Class 15: Secured Claim of FNB:**

Class 15 shall consist of the Secured Claim of FNB based on Claim 90.

FNB filed a proof of claim for $257,321.94. To secure its claim, FNB asserts first priority lien upon and security interest in one (1) 2025 Kenworth T880 Hooklift Truck with VIN 168333 (the "**Class 15 Collateral**"). Debtor values FNB's secured claim at $225,000.00 (the "**Secured Class 15 Claim**").

Debtor shall surrender the Class 15 Collateral to FNB no later than the Effective Date. FNB shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. FNB shall have an Allowed Class 36 General Unsecured Claim in the amount of $32,321.94 (the "Class 15 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 15 Collateral, as set forth in the Disclosure Statement. FNB shall not be required to file an amended proof of claim, and the Class 15 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 15 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 15 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to FNB under this Plan on account of the Secured Class 15 Claim.

Class 15 is Impaired and entitled to vote on the Plan.

**4.16 Class 16: Secured Claim of Hanmi:**

Class 16 shall consist of the Secured Claim of Hanmi based on Claim 57.

Hanmi filed a proof of claim for $44,354.12. To secure its claim, Hanmi asserts first priority lien upon and security interest in five (5) Roll Off Dumpsters (the "**Class 16 Collateral**"). Debtor values Hanmi's secured claim at $27,500.00 (the "**Secured Class 16 Claim**").

Debtor shall surrender the Class 16 Collateral to Hanmi no later than the Effective Date. Hanmi shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Hanmi shall have an Allowed Class 36 General Unsecured Claim in the amount of $16,854.12 (the "Class 16 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 16 Collateral, as set forth in the Disclosure Statement. Hanmi shall not be required to file an amended proof of claim, and the Class 16 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 16 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 16 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Hanmi under this Plan on account of the Secured Class 16 Claim.

Class 16 is Impaired and entitled to vote on the Plan.

**4.17 Class 17: Secured Claim of Horizon:**

Class 17 shall consist of the Secured Claim of Horizon based on Claim 39.

Horizon filed a proof of claim for $427,244.40. To secure its claim, Horizon asserts first priority lien upon and security interest in one (1) Tigercat LX830D Feller Buncher Track Cutter with Tigercat Felling Saw (the "**Class 17 Collateral**"). Debtor values Horizon's secured claim at $339,900.00 (the "**Secured Class 17 Claim**").

Each monthly contract payment of $7,768.08 includes embedded interest in the amount of $1,351.41. The proof of claim amount equates to fifty-five (55) remaining payments under the loan. Debtor has paid postpetition payments to Horizon through the date of this Plan the total of $20,891.47. These payments are applied to the Claim, reducing it to $406,352.93.

Debtor shall surrender the Class 17 Collateral to Horizon no later than the Effective Date. Horizon shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Horizon shall have an Allowed Class 36 General Unsecured Claim in the amount of $66,452.93 (the "Class 17 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 17 Collateral, as set forth in the Disclosure Statement. Horizon shall not be required to file an amended proof of claim, and the Class 17 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 17 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 17 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Horizon under this Plan on account of the Secured Class 17 Claim.

Class 17 is Impaired and entitled to vote on the Plan.

**4.18 Class 18: Secured Claims of Huntington:**

Class 18 shall consist of the Secured Claims of Huntington based on Claim 72, Claim 73, Claim 74, and Claim 76.

Huntington filed a proof of Claim 72 for $17,116.10 based upon the lease with Debtor dated April 2021 (the "**Secured Class 18(a) Claim**"). To secure its claim, Huntington asserts first priority lien upon and security interest in one (1) 2021 Freightliner M2106 Chip Truck (the "**Class 18(a) Collateral**").

Huntington filed a second proof of claim, Claim 73, for $29,811.23 based upon the lease with Debtor (the "**Secured Class 18(b) Claim**"). To secure its claim, Huntington asserts a first priority lien upon and security interest in one (1) 2024 45' Kalyn Siebert KS-CHP-2A-45 LF Chip Trailer (the "**Class 18(b) Collateral**").

Huntington filed a third proof of claim, Claim 74, for $24,571.13 based upon the lease with Debtor dated March 2022 (the "**Secured Class 18(c) Claim**"). To secure its claim, Huntington asserts first priority lien upon and security interest in one (1) CAT D6TLGP Crawler Dozer (the "**Class 18(c) Collateral**").

Huntington filed a fourth proof of claim, Claim 76, for $66,695.24 based upon the lease with Debtor dated October 2023 (the "**Secured Class 18(d) Claim**"). To secure its claim, Huntington asserts first priority lien upon and security interest in one (1) 2024 45' Kalyn Siebert KS-CHP-2A-45 LF Chip Trailer (the "**Class 18(d) Collateral**").

Debtor shall surrender the Class 18(a) Collateral, the Class 18(b) Collateral, the Class 18(c) Collateral, and the Class 18(d) Collateral (collectively, the "Class 18 Collateral") to Huntington no later than the Effective Date. Huntington shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Huntington shall have an Allowed Class 36 General Unsecured Claim in the amount of $40,506.47 (the "Class 18 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 18 Collateral, as set forth in the Disclosure Statement. Huntington shall not be required to file an amended proof of claim, and the Class 18 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 18 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 18 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Huntington under this Plan on account of the Secured Class 18 Claim.

Class 18 is Impaired and entitled to vote on the Plan.

**4.19 Class 19: Secured Claim of MHC:**

Class 19 shall consist of the Secured Claim of MHC based on Claim 75.

MHC filed a proof of claim for $599,533.72 which is a claim for three (3) Kenworth trucks. To secure its claim, MHC asserts first priority lien upon and security interest in one (1) 2025

Kenworth W9 Series with VIN 311720, one (1) 2024 Kenworth W9 Series with VIN 121094, and one (1) 2025 Kenworth W900 with VIN 0966 (collectively, the "**Class 19 Collateral**").

Debtor shall surrender the Class 19 Collateral to MHC no later than the Effective Date. MHC shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. MHC shall have an Allowed Class 36 General Unsecured Claim in the amount of $98,748.72 (the "Class 19 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 19 Collateral, as set forth in the Disclosure Statement. MHC shall not be required to file an amended proof of claim, and the Class 19 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 19 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 19 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to MHC under this Plan on account of the Secured Class 19 Claim.

Class 19 is Impaired and entitled to vote on the Plan.

**4.20 Class 20: Secured Claims of Mitsubishi:**

Class 20 shall consist of the Secured Claims of Mitsubishi based on Claim 59, Claim 60, and Claim 61.

Mitsubishi filed proof of Claim 61 for $349,963.08. To secure its claim, Mitsubishi asserts first priority lien upon and security interest in one (1) Kobelco SK300LC-11 Crawler Excavator with VIN 0025 (the "**Class 20(a) Collateral**").

Mitsubishi filed a second proof of claim, Claim 60, for $211,012.82 (the "**Class 20(b) Claim**"). To secure its claim, Mitsubishi asserts first priority lien upon and security interest in one (1) 2025 Kobelco SK210LC-11 Crawler Excavator with VIN 20507 and coupler, bucket, thumb, and raker (the "**Class 20(b) Collateral**").

Mitsubishi filed a third proof of claim, Claim 59, for $74,187.70 (the "**Class 20(c) Claim**"). To secure its claim, Mitsubishi asserts first priority lien upon and security interest in one (1) 2023 Chevrolet 3500HD with VIN 28191 (the "**Class 20(c) Collateral**"). Debtor values Mitsubishi's secured claim at $43,150.00 (the "Secured Class 20(c) Claim").

Debtor shall surrender the Class 20(a) Collateral, the Class 20(b) Collateral, and the Class 20(c) Collateral (collectively, the "Class 20 Collateral") to Mitsubishi no later than the Effective Date. Mitsubishi shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Mitsubishi shall have an Allowed Class 36 General Unsecured Claim in the amount of $262,283.60 (the "Class 20 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 20 Collateral, as set forth in the Disclosure Statement. Mitsubishi shall not be required to file an amended proof of claim, and the Class 20 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of

the Class 20 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 20 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Mitsubishi under this Plan on account of the Secured Class 20 Claim.

Class 20 is Impaired and entitled to vote on the Plan.

**4.21 Class 21: Secured Claim of Navitas:**

Class 21 shall consist of the Secured Claim of Navitas based on Claim 63.

Navitas filed a proof of claim for $86,225.87. To secure its claim, Navitas asserts first priority lien upon and security interest in one (1) 2024 Chevrolet Silverado 3500HD with VIN 54040 (the "**Class 21 Collateral**"). Debtor values Navitas's secured claim at $45,875.00 (the "**Secured Class 21 Claim**").

Debtor shall surrender the Class 21 Collateral to Navitas no later than the Effective Date. Navitas shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Navitas shall have an Allowed Class 36 General Unsecured Claim in the amount of $40,350.87 (the "Class 21 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 21 Collateral, as set forth in the Disclosure Statement. Navitas shall not be required to file an amended proof of claim, and the Class 21 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 21 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 21 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Navitas under this Plan on account of the Secured Class 21 Claim.

Class 21 is Impaired and entitled to vote on the Plan.

**4.22 Class 22: Secured Claim of North Mill:**

Class 22 shall consist of the Secured Claim of North Mill based on Claim 98.

North Mill filed a proof of claim for $371,561.05 which includes a prepayment penalty of $17,608.40 which must be removed from the claim. To secure its claim, North Mill asserts first priority lien upon and security interest in one (1) 2025 Kenworth T880 Dump Truck and one (1) New Rotobec 915MT30 Loader and Waste Grapple (the "**Class 22 Collateral**"). Debtor values North Mill's secured claim at $323,000.00 (the "**Secured Class 22 Claim**").

Debtor shall surrender the Class 22 Collateral to North Mill no later than the Effective Date. North Mill shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. North Mill shall have an Allowed Class 36 General Unsecured Claim in the amount of $30,952.65 (the "Class 22 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 22 Collateral, as set forth in the Disclosure Statement. North Mill shall not be required to file an amended proof of claim, and the

Class 22 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 22 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 22 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to North Mill under this Plan on account of the Secured Class 22 Claim.

Class 22 is Impaired and entitled to vote on the Plan.

**4.23 Class 23: Secured Claim of Northland:**

Class 23 shall consist of the Secured Claim of Northland based on Claim 28.

Northland filed a combined proof of claim for $541,800.60. To secure its claim, Northland asserts first priority lien upon and security interest in the following pieces of equipment:

One (1) 2022 AMI Stick Pivot Excavator Thumb, one (1) 2022 AMI Stick Pivot Excavator Thumb with SN 641 and one (1) 2022 Root Rake (the "**Class 23(a) Collateral**").

One (1) 2024 Peerless CTSSF-45 Live Floor Trailer (the "**Class 23(b) Collateral**").

One (1) 2023 Lovin D6T 12' Dozer Rake (the "**Class 23(c) Collateral**").

One (1) 2023 Vermeer S925TX Mini Skid Steer (the "**Class 23(d) Collateral**").

One (1) 2023 Rockland Mfg 42-MP-HYD-SK230 and one (1) 2023 Rockland Mfg 36-MP-HYD-SK210 (the "**Class 23(e) Collateral**").

One (1) 2023 SawMaster 1600 Grapple Saw (the "**Class 23(f) Collateral**").

One (1) 2025 Thunder Creek MTT690 Fuel Trailer (the "**Class 23(g) Collateral**").

Two (2) 2023 Peerless IW-42 Chip Trailers and one (1) 2025 Peerless CTSSF-45 Live Floor Trailer (the "**Class 23(h) Collateral**").

Debtor shall surrender the Class 23(a) Collateral, the Class 23(b) Collateral, the Class 23(c) Collateral, the Class 23(d) Collateral, the Class 23(e) Collateral, the Class 23(f) Collateral, the Class 23(g) Collateral, and the Class 23(h) Collateral (collectively, the "**Class 23 Collateral**") to Northland no later than the Effective Date. Northland shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Northland shall have an Allowed Class 36 General Unsecured Claim in the amount of $338,305.60 (the "Class 23 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 23 Collateral, as set forth in the Disclosure Statement. Northland shall not be required to file an amended proof of claim, and the Class 23 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 23 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 23 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Northland under this Plan on account of the Secured Class 23 Claim.

Class 23 is Impaired and entitled to vote on the Plan.

**4.24 Class 24: Secured Claim of Old National:**

Class 24 shall consist of the Secured Claim of Old National based on Claim 50.

Old National filed a proof of claim for $405,853.56, which is a combined amount for four (4) pieces of equipment. To secure its claim, Old National asserts first priority lien upon and security interest in one (1) 2024 Globe Dump Trailer GTDD (the "**Class 24(a) Collateral**") and one (1) 2025 Ensign 1730C Grapple (the "**Class 24(b) Collateral**") and in one (1) 2020 Terramac RT14R Crawler Carrier with SN 0177 (the "**Class 24(c) Collateral**") and in one (1) 2023 Kobelco SK140SRLC-7 Excavator with SN 52784 (the "**Class 24(d) Collateral**").

Debtor shall surrender the Class 24(a) Collateral, the Class 24(b) Collateral, the Class 24(c) Collateral, and the Class 24(d) Collateral (collectively, the "**Class 24 Collateral**") to Old National no later than the Effective Date. Old National shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Old National shall have an Allowed Class 36 General Unsecured Claim in the amount of $161,603.56 (the "Class 24 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 24 Collateral, as set forth in the Disclosure Statement. Old National shall not be required to file an amended proof of claim, and the Class 24 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 24 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 24 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Old National under this Plan on account of the Secured Class 24 Claim.

Class 24 is Impaired and entitled to vote on the Plan.

**4.25 Class 25: Secured Claim of Paccar:**

Class 25 shall consist of the Secured Claim of Paccar based on Claim 92.

Paccar filed a proof of claim for $383,874.18 which is a combined claim for two loans. To secure its claim, Paccar asserts first priority lien upon and security interest in one (1) 2025 Kenworth T280 with VIN 157099 (the "**Class 25(a) Collateral**") and one (1) 2025 Kenworth T280 with VIN 179834 ("**Class 25(b) Collateral**").

Debtor shall surrender the Class 25(a) Collateral, and the Class 25(b) Collateral (collectively, the "Class 25 Collateral") to Paccar no later than the Effective Date. Paccar shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Paccar shall have an Allowed Class 36 General Unsecured Claim in the amount of $155,884.18 (the "Class 25 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 25 Collateral, as set forth in the Disclosure Statement. Paccar shall not be required to file an amended proof of claim, and the Class 25 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 25 Collateral. Surrender of

the collateral constitutes the indubitable equivalent of the Secured Class 25 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Paccar under this Plan on account of the Secured Class 25 Claim.

Class 25 is Impaired and entitled to vote on the Plan.

**4.26 Class 26: Secured Claim of Pawnee:**

Class 26 shall consist of the Secured Claim of Pawnee based on Claim 6.

Pawnee filed a proof of claim for $168,410.58. To secure its claim, Pawnee asserts first priority lien upon and security interest in one (1) Kobelco SK210LC-11 Crawler Excavator (the "**Class 26 Collateral**").

Debtor shall surrender the Class 26 Collateral to Pawnee no later than the Effective Date. Pawnee shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Pawnee shall have an Allowed Class 36 General Unsecured Claim in the amount of $58,410.58 (the "Class 26 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 26 Collateral, as set forth in the Disclosure Statement. Pawnee shall not be required to file an amended proof of claim, and the Class 26 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 26 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 26 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Pawnee under this Plan on account of the Secured Class 26 Claim.

Class 26 is Impaired and entitled to vote on the Plan.

**4.27 Class 27: Secured Claims of Stearns:**

Class 27 shall consist of the Secured Claims of Stearns based on Claim 88.

The Stearns proof of claim states a total claim of $369,023.98 with the secured claim being $228,060.84. The claim consists of two loans – 5-001 and 5-002.

To secure its claim for loan 5-001, Stearns asserts first priority lien upon and security interest in one (1) 2023 Chevrolet Silverado 3500HD with VIN 195077, one (1) 2023 Chevrolet Silverado 2500 HD with VIN 120835, and one (1) 2024 Chevrolet Silverado 2500 HD with VIN 191858 (the "**Class 27(a) Collateral**"). Debtor values Stearns's secured claim at $113,235.00 (the "**Secured Class 27(a) Claim**").

To secure its claim for loan 5-002, Stearns asserts first priority lien upon and security interest in one (1) 2023 Chevrolet Silverado 2500HD with VIN 162730 and one (1) 2022 Chevrolet Silverado 2500 HD with VIN 346923 (the "**Class 27(b) Collateral**"). Debtor values Stearns's secured claim at $61,725.00 (the "**Secured Class 27(b) Claim**").

Debtor shall surrender the Class 27(a) Collateral, and the Class 27(b) Collateral (collectively, the "Class 27 Collateral") to Stearns no later than the Effective Date. Stearns shall

retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Stearns shall have an Allowed Class 36 General Unsecured Claim in the amount of $194,063.98 (the "Class 27 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 27 Collateral, as set forth in the Disclosure Statement. Stearns shall not be required to file an amended proof of claim, and the Class 27 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 27 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 27 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Stearns under this Plan on account of the Secured Class 27 Claim.

Class 27 is Impaired and entitled to vote on the Plan.

**4.28 Class 28: Secured Claims of Sumitomo:**

Class 28 shall consist of the Secured Claims of Sumitomo based on Claim 86, Claim 87, and Claim 89.

Sumitomo filed a proof of claim, Claim 86, for $241,613.65. To secure its claim, Sumitomo asserts a first priority lien upon and security interest in one (1) 2025 Kenworth W990 Truck Tractor with VIN 169659 (the "**Class 28(a) Collateral**"). Debtor values Sumitomo's secured claim at $166,750.00 (the "**Secured Class 28(a) Claim**").

Sumitomo filed a proof of claim, Claim 87, for $109,093.59. To secure its claim, Sumitomo asserts first priority lien upon and security interest in one (1) 2022 Kenworth T880 Dump Truck and with Rotobec Elite 910 MT27 Grapple and 2021 Brandon DB248787 Dump Body (the "**Class 28(b) Collateral**"). Debtor values Sumitomo's secured claim at $109,093.59 (the "**Secured Class 28(b) Claim**").

Sumitomo filed a third proof of claim, Claim 89, for $255,534.82 based upon a lease between Debtor and Northland dated January 2024 that was assigned to Sumitomo. To secure its claim, Sumitomo asserts first priority lien upon and security interest in one (1) Kobelco Excavator (the "**Class 28(c) Collateral**").

Debtor shall surrender the Class 28(a) Collateral, the Class 28(b) Collateral, and the Class 28(c) Collateral (collectively, the "Class 28 Collateral") to Sumitomo no later than the Effective Date. Sumitomo shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Sumitomo shall have an Allowed Class 36 General Unsecured Claim in the amount of $238,148.47 (the "Class 28 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 28 Collateral, as set forth in the Disclosure Statement. Sumitomo shall not be required to file an amended proof of claim, and the Class 28 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 28 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the

Secured Class 28 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Sumitomo under this Plan on account of the Secured Class 28 Claim.

Class 28 is Impaired and entitled to vote on the Plan.

**4.29 Class 29: Secured Claims of Toyota:**

Class 29 shall consist of the Secured Claims of Toyota based on Claim 24, Claim 25, and Claim 26.

Toyota filed proof of claim 24 for $197,772.51. To secure its claim, Toyota asserts first priority lien upon and security interest in one (1) 2025 Kenworth W900 with VIN 120967 (the "**Class 29(a) Collateral**"). Debtor values Toyota's secured claim at $149,600.00 (the "**Secured Class 29(a) Claim**").

Toyota filed a second proof of claim, Claim 25, for $134,034.19. To secure its claim, Toyota asserts first priority lien upon and security interest in one (1) 2025 Kenworth T280 Aero (the "**Class 29(b) Collateral**").

Toyota filed a third proof of claim, Claim 26, for $222,613.10. To secure its claim, Toyota asserts first priority lien upon and security interest in one (1) 2025 Kenworth W990 Series with VIN 120972 (the "**Class 29(c) Collateral**"). Debtor values Toyota's secured claim at $154,600.00 (the "**Secured Class 29(c) Claim**").

Debtor shall surrender the Class 29(a) Collateral, the Class 29(b) Collateral, and the Class 29(c) Collateral (collectively, the "Class 29 Collateral") to Toyota no later than the Effective Date. Toyota shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Toyota shall have an Allowed Class 36 General Unsecured Claim in the amount of $133,969.80 (the "Class 29 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 29 Collateral, as set forth in the Disclosure Statement. Toyota shall not be required to file an amended proof of claim, and the Class 29 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 29 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 29 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Toyota under this Plan on account of the Secured Class 29 Claim.

Class 29 is Impaired and entitled to vote on the Plan.

**4.30 Class 30: Secured Claim of Unifi:**

Class 30 shall consist of the Secured Claim of Unifi based on Claim 3.

Unifi filed a proof of claim for $399,412.14. To secure its claim, Unifi asserts first priority lien upon and security interest in one (1) Komptech Multistar XL3 Scrap Processor with SN 7192 (the "**Class 30 Collateral**"). Debtor values Unifi's secured claim at $399,412.14 (the "**Secured Class 30 Claim**").

Debtor shall surrender the Class 30 Collateral to Unifi no later than the Effective Date. Unifi shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Because the fair market value of the Class 30 Collateral equals or exceeds the Allowed Claim of Unifi, Unifi shall have no Deficiency Claim and no Class 36 General Unsecured Claim. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 30 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Unifi under this Plan on account of the Secured Class 30 Claim.

Class 30 is Impaired and entitled to vote on the Plan.

**4.31 Class 31: Secured Claim of Wells Fargo:**

Class 31 shall consist of the Secured Claim of Wells Fargo based on Claim 20.

Wells Fargo filed a proof of claim for $165,210.48. To secure its claim, Wells Fargo asserts first priority lien upon and security interest in one (1) 2025 Vermeer AX17 Brush Chipper (the "**Class 31 Collateral**"). The Class 31 Claim had a balance of $165,210.48 as of the Petition Date.

Debtor shall surrender the Class 31 Collateral to Wells Fargo no later than the Effective Date. Wells Fargo shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Wells Fargo shall have an Allowed Class 36 General Unsecured Claim in the amount of $66,460.48 (the "Class 31 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 31 Collateral, as set forth in the Disclosure Statement. Wells Fargo shall not be required to file an amended proof of claim, and the Class 31 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 31 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 31 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Wells Fargo under this Plan on account of the Secured Class 31 Claim.

Class 31 is Impaired and entitled to vote on the Plan.

**4.32 Class 32: Secured Claim of WF Vendor:**

Class 32 shall consist of the Secured Claims of WF based on Claim 19.

WF filed a proof of claim for $815,228.09 based upon a Master Loan Agreement dated December 17, 2020. To secure its claim, WF asserts first priority lien upon and security interest in the following pieces of equipment:

One (1) 2017 Kobelco SK260LC-10 Excavator with SN 0226 (the "**Class 32(a) Collateral**"). The Class 32(a) Claim had a balance of $5,007.18 as of the Petition Date. This Class 32(a) Claim has been paid in full postpetition.

One (1) 2019 Kobelco SK300LC-10 Excavator with SN 0180, one (1) TAG Cutters, and one (1) Solesbees Thumb (the "**Class 32(b) Collateral**"). Debtor values secured claim at $88,200.00 (the "**Secured Class 32(b) Claim**").

One (1) 2018 Kobelco SK300LC-10 Excavator with SN 5087 and one (1) 2021 Kobelco SK300LC-10 Excavator with SN 0154 (the "**Class 32(c) Collateral**"). Debtor values the secured claim at $173,100.00 (the "**Secured Class 32(c) Claim**").

One (1) 2021 Kobelco SK350LC-10 Excavator with SN 5236 and one (1) 2021 TAG Thumb (the "**Class 32(d) Collateral**"). Debtor values the secured claim at $109,250.00 (the "**Secured Class 32(d) Claim**").

One (1) 2019 Kobelco SK350LC-10 Excavator with SN 0418 and one (1) 2019 TAG Thumb (the "**Class 32(e) Collateral**"). Debtor values the secured claim at $63,500.00 (the "**Secured Class 32(e) Claim**").

One (1) 2019 Kobelco SK210LC-10 Excavator with SN 5014 and one (1) 2019 Solesbees Thumb (the "**Class 32(f) Collateral**"). Debtor values the secured claim at $64,750.00 (the "**Secured Class 32(f) Claim**").

One (1) 2021 Kobelco SK300LC-10 Excavator with SN 5065 (the "**Class 32(g) Collateral**"). Debtor values the secured claim at $82,500.00 (the "**Secured Class 32(g) Claim**").

One (1) 2025 Kobelco SK260LC-11 Excavator with SN 0161 (the "**Class 32(h) Collateral**"). Debtor values the secured claim at $128,700.00 (the "**Secured Class 32(h) Claim**").

Debtor shall surrender the Class 32(a) Collateral, the Class 32(b) Collateral, the Class 32(c) Collateral, the Class 32(d) Collateral, the Class 32(e) Collateral, the Class 32(f) Collateral, the Class 32(g) Collateral, and the Class 32(h) Collateral (collectively, the "Class 32 Collateral") to WF Vendor no later than the Effective Date. WF Vendor shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. WF Vendor shall have an Allowed Class 36 General Unsecured Claim in the amount of $100,220.91 (the "Class 32 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 32 Collateral, as set forth in the Disclosure Statement. WF Vendor shall not be required to file an amended proof of claim, and the Class 32 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 32 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 32 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to WF Vendor under this Plan on account of the Secured Class 32 Claim.

Class 32 is Impaired and entitled to vote on the Plan.

**4.33 Class 33: Secured Claim of Wintrust:**

Class 33 shall consist of the Secured Claim of Wintrust based on Claim 9.

Wintrust filed a proof of claim for $231,960.27. To secure its claim, Wintrust asserts first priority lien upon and security interest in one (1) CAT D6 Crawler Dozer with SN 01272 with two (2) 2023 Lovin D6T Dozer Rakes (the "**Class 33 Collateral**"). Debtor values Wintrust's secured claim at $196,500.00 (the "**Secured Class 33 Claim**").

Debtor shall surrender the Class 33 Collateral to Wintrust no later than the Effective Date. Wintrust shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Wintrust shall have an Allowed Class 36 General Unsecured Claim in the amount of $35,460.27 (the "Class 33 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 33 Collateral, as set forth in the Disclosure Statement. Wintrust shall not be required to file an amended proof of claim, and the Class 33 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 33 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 33 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Wintrust under this Plan on account of the Secured Class 33 Claim.

Class 33 is Impaired and entitled to vote on the Plan.

**4.34 Class 34: Secured Claim of Zaxis:**

Class 34 shall consist of the Secured Claim of Zaxis based on Claim 84.

Zaxis filed a proof of claim for $261,317.21. To secure its claim, Zaxis asserts first priority lien upon and security interest in one (1) Hitachi ZW220-6 Wheel Loader with SN 15142 with bucket, coupler, forks and brush grapple (the "**Class 34 Collateral**"). Debtor values Zaxis's secured claim at $179,900.00 (the "**Secured Class 34 Claim**").

Debtor shall surrender the Class 34 Collateral to Zaxis no later than the Effective Date. Zaxis shall retain its lien until surrender is complete and may thereafter dispose of its collateral in accordance with applicable non-bankruptcy law without further order of the Bankruptcy Court, and the automatic stay and the injunction provided under this Plan shall be deemed modified to permit such disposition. Zaxis shall have an Allowed Class 36 General Unsecured Claim in the amount of $81,417.21 (the "Class 34 Deficiency Claim"), which is the amount of its Claim less the fair market value of the Class 34 Collateral, as set forth in the Disclosure Statement. Zaxis shall not be required to file an amended proof of claim, and the Class 34 Deficiency Claim shall not be increased or reduced by the proceeds of any disposition of the Class 34 Collateral. Surrender of the collateral constitutes the indubitable equivalent of the Secured Class 34 Claim under § 1129(b)(2)(A)(iii) of the Bankruptcy Code. Debtor shall make no further payment to Zaxis under this Plan on account of the Secured Class 34 Claim.

Class 34 is Impaired and entitled to vote on the Plan.

**4.35 Class 35: Secured Claim of Libertas:**

Class 35 shall consist of the Secured Claim of Libertas based on Claim 97.

Libertas filed two proofs of claim with Claim 94 being filed under the name Atlas Acquisitions, LLC and Claim 97 filed by Libertas. Libertas is entitled to be paid on only one claim. Each proof of claim asserts a secured claim in the amount of $308,004.80 (the "**Libertas Secured Claim**"). Libertas asserts that Debtor sold its future receipts to it on or about October 1, 2025.

During the Bankruptcy Case, Libertas received $45,000 dollars in adequate protection payments which shall be applied to its claim reducing it to $263,004.80. Any payments made to Libertas up to the Effective Date will be applied toward the claim.

Libertas holds a security interest in Debtor's future receipts, including the Accounts Receivable, and Debtor does not contest the validity, extent, or priority of Libertas's lien. The Libertas Secured Claim shall be paid from Available Cash, including the Net AR Proceeds, after payment in full of the fees of the Office of the United States Trustee and Allowed Administrative Claims, and before any Distribution to Holders of Allowed Priority Tax Claims, Allowed Priority Claims, or Class 36 General Unsecured Claims, as provided in Section 5.06 of this Plan. Libertas shall retain its lien until the Libertas Secured Claim is paid in full.

Class 35 is Impaired and entitled to vote on the Plan.

**4.36 Class 36: General Unsecured Creditor Class (the "GUCs Class")**

This Class 36 consists of all Allowed General Unsecured Claims, including (a) the Deficiency Claims of the Holders of the Class 1 through Class 34 Claims in the amounts fixed in this Article IV, which total $3,520,813.13, (b) Allowed Claims arising from the rejection of executory contracts and unexpired leases under Article VIII of this Plan, and (c) all other Allowed Claims that are not Administrative Claims, Priority Tax Claims, Priority Claims, or Secured Claims. The scheduled General Unsecured Creditors and those that filed proofs of claim, excluding any Equipment Lenders' deficiency claims total $4,303,419.78. The total estimated Class 36 claims are $7,824,232.91. These claims are detailed on Exhibit B attached to the Disclosure Statement.

Holders of Allowed Class 36 Claims shall be paid their Pro Rata Share of Available Cash remaining after payment in full of the fees of the Office of the United States Trustee, Allowed Administrative Claims (including Professional Claims), the Libertas Secured Claim, Allowed Priority Tax Claims, and Allowed Priority Claims, as provided in Section 5.06 of this Plan. The Liquidating Debtor shall make a Final Distribution to Class 36 after the expiration of the AR Collection Period and the resolution of all objections to Claims.

Debtor makes no representation as to the amount, if any, that will be available for Distribution to Class 36, but estimates a Distribution of less than one percent (1%). No person has guaranteed or is obligated to fund any Distribution to Class 36. Holders of Class 36 Claims shall receive no Distribution on account of interest accruing on or after the Petition Date.

Class 36 is Impaired and entitled to vote on the Plan.

### 4.37 Class 37: Equity Interests

This Class 37 consists of the Equity Interests of Debtor. Ben Ellis is the sole member of Debtor. Holders of Class 37 Equity Interests shall receive no Distribution under this Plan. Ben Ellis shall receive no salary, wages, or distributions from Debtor on or after the Effective Date.

Upon the Final Distribution, the Equity Interests shall be cancelled and Debtor shall be dissolved as provided in Section 5.15 of this Plan.

Class 37 is Impaired. Because Holders of Class 37 Equity Interests receive no Distribution under this Plan, Class 37 is deemed to reject the Plan pursuant to § 1126(g) of the Bankruptcy Code and is not entitled to vote on the Plan.

## ARTICLE V. MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

### Section 5.01 Plan Distributions

This Plan is a plan of liquidation. All Distributions under this Plan shall be made by the Liquidating Debtor from Available Cash. Debtor shall not continue in business after the Effective Date except as necessary to surrender the Collateral, collect the Accounts Receivable, prosecute or settle Causes of Action, make Distributions, and wind up and dissolve.

### Section 5.02 Liquidating Debtor

Southern Tree Professionals, LLC shall continue in existence after the Effective Date solely as the Liquidating Debtor and solely for the limited purposes described in Section 5.01. Ben Ellis shall serve as the sole manager of the Liquidating Debtor and shall receive no salary, wages, or distributions from the Liquidating Debtor for such service.

### Section 5.03 Surrender of Collateral

Debtor began surrendering the Collateral securing the Class 1 through Class 34 Claims on October 1, 2026 and shall surrender all such Collateral no later than the Effective Date. Debtor shall give each affected Holder not less than seven (7) days' written notice of the date and location at which its Collateral will be made available. Debtor shall maintain insurance on each item of Collateral until its Surrender Date. If a Holder fails to take possession of its Collateral within thirty (30) days after the date specified in Debtor's notice, Debtor may abandon that Collateral to the Holder pursuant to § 554 of the Bankruptcy Code without further order of the Bankruptcy Court, and Debtor shall thereafter have no liability for its storage, insurance, or condition.

### Section 5.04 Collection of Accounts Receivable

During the AR Collection Period the Liquidating Debtor shall use commercially reasonable efforts to collect the Accounts Receivable. The Liquidating Debtor may compromise, settle, or write off any account without further order of the Bankruptcy Court, and may employ collection counsel or a collection agent whose reasonable fees shall be paid from the gross collections as a

cost of collection. Upon expiration of the AR Collection Period, the Liquidating Debtor shall abandon or write off any Accounts Receivable then remaining uncollected.

**Section 5.05 Funding of Plan**

The sole sources of funding for this Plan are (a) Cash held by Debtor on the Effective Date, (b) the Net AR Proceeds, and (c) the net proceeds of any Causes of Action. No member, insider, affiliate, or other person has guaranteed, or is obligated to contribute or advance funds for, any Distribution under this Plan. Debtor makes no representation that Available Cash will be sufficient to pay Allowed Administrative Claims in full.

**Section 5.06 Order of Distribution**

Available Cash shall be applied in the following order of priority: first, to all fees due the Office of the United States Trustee under 28 U.S.C. § 1930 together with any statutory interest; second, to Allowed Administrative Claims, including Allowed Professional Claims, and if Available Cash is insufficient to pay them in full, Pro Rata among them; third, to the Class 35 Libertas Secured Claim, until paid in full; fourth, to Allowed Priority Tax Claims and Allowed Priority Claims; and fifth, to Holders of Allowed Class 36 General Unsecured Claims, Pro Rata. No Distribution shall be made to a junior category until each senior category has been paid in full.

**Section 5.07 Disbursing Agent**

The Liquidating Debtor shall serve as Disbursing Agent and is authorized to make Distributions pursuant to this Plan and to maintain such bank accounts as are necessary to do so, or to designate Debtor's bankruptcy counsel, the law firm of Rountree Leitman Klein & Geer, LLC, to serve as Disbursing Agent. The Disbursing Agent shall serve without bond and without compensation other than reimbursement of actual out-of-pocket expenses, which shall be paid as a cost of administering this Plan.

**Section 5.08 Retained Actions**.

On the Effective Date, pursuant to § 1123(b) of the Bankruptcy Code, except as otherwise provided in the Plan, all Causes of Action (including Avoidance Actions) that Debtor or the Estate had or had power to assert immediately prior to the Confirmation Date, shall become property of the Liquidating Debtor.

**Section 5.09 Settlement of Claims**.

The Liquidating Debtor shall be authorized to resolve objections to Claims and enter into settlements and stipulations regarding the amount of Allowed Claims without notice or further order of the Bankruptcy Court.

**Section 5.10 Exclusive Right to Modify Plan**.

Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to, or modifications of, the Plan until and including the Confirmation Date.

**Section 5.11 Effectuating Documents; Further Transactions**.

Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Section 5.12 Further Authorization**.

Debtor and the Liquidating Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary or desirable to carry out the intentions and purposes and to give full effect to the provisions of this Plan.

**Section 5.13 Retention and Payment of Professionals by the Liquidating Debtor**.

Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Debtor may employ and pay professionals in the ordinary course of business for purposes of implementing the Plan or for such other purposes it sees fit in its sole discretion. Compensation and reimbursement of expenses earned and incurred by professionals performing services for the Liquidating Debtor, as well as Professional Claims arising after confirmation, shall be paid by the Liquidating Debtor monthly after rendition of bills to the Liquidating Debtor, and no further applications for compensation, reimbursements of expenses, or payment of administrative expenses shall be necessary or required unless a dispute arises in regard thereto; in the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and hearing.

**Section 5.14 U.S. Trustee Fees and Reporting**.

Debtor and the Liquidating Debtor, as appropriate, shall cause to be paid any and all fees of the Office of the United States Trustee as and when such fees become due, until this Bankruptcy Case is closed and a final decree is entered. In addition, the Liquidating Debtor will file all post-confirmation reports required by the United States Trustee's Office. Any outstanding fees owed to the U.S. Trustee as of the Effective Date shall be paid in full on the Effective Date. The U.S. Trustee statutory fees are calculated on a quarterly basis based upon Debtor's total disbursements during the quarter.

**Section 5.15 Dissolution of Debtor**

Promptly following the Final Distribution, the Liquidating Debtor shall file articles of dissolution with the Georgia Secretary of State, shall file with the Bankruptcy Court a final report

accounting for all Distributions made under this Plan, and shall move for entry of a final decree closing the Bankruptcy Case. Upon dissolution, the Equity Interests shall be cancelled and the books and records of Debtor may be destroyed or abandoned without further order of the Bankruptcy Court.

## ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN

**Section 6.01 Classes Entitled to Vote**.

Each Impaired Class of Claims shall be entitled to vote to accept or reject the Plan. Each Unimpaired Class of Claims shall be deemed to have accepted the Plan and shall not be entitled to vote to accept or reject the Plan. Class 37 is deemed to reject the Plan as provided in Section 4.37 of this Plan.

**Section 6.02 Claim Designations**.

The Plan Proponent reserves the right to seek to designate, pursuant to § 1126(e) of the Bankruptcy Code, any vote cast by a Holder of a Claim whose vote on the Plan was submitted for an improper purpose or not in good faith.

## ARTICLE VII. PROVISIONS REGARDING DISTRIBUTIONS

**Section 7.01 Date of Distributions to Creditors**.

Payments to Holders of Allowed Claims shall be paid as provided in Article IV of this Plan.

**Section 7.02 Distributions Only on Allowed Claims**.

A Claim is in a particular Class and entitled to receive Distributions only to the extent it is an Allowed Claim, and only if and when such Claim becomes an Allowed Claim. A Claim that is ultimately a Disallowed Claim, or otherwise not entitled to any Distribution by settlement, compromise, untimely filing, or other order of the Bankruptcy Court shall not participate in the Distributions to be made under the Plan.

**Section 7.03 Distributions to Holders as of the Record Date**.

All Distributions on account of Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. The Disbursing Agent shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

**Section 7.04 Delivery of Distributions**.

All Distributions to a Holder of an Allowed Claim shall be made by the Disbursing Agent (a) to the address set forth on the proof of claim filed by such Holder, (b) to the address set forth in any written notices of address change delivered to the Debtor's undersigned counsel after the date of filing of any related proof of claim, (c) to the address reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of change of address, or (d) if the Holder's address is not listed in the Schedules and no proof of claim has been filed, at the last known address of such Holder according to the Debtor's books and records.

**Section 7.05 Creditors' Duty to Provide Address Updates**.

It shall be the responsibility of each Holder to maintain a current address with the Disbursing Agent by informing Debtor's undersigned counsel in writing of any address change. Providing such updated address information following any change of address shall be a condition precedent to receiving any Distributions under this Plan.

**Section 7.06 Interest on Claims**.

Except as provided in a Final Order entered in the Bankruptcy Case, (a) no Holder of any Claim shall be entitled to interest accruing on or after the Petition Date on such Claim, and (b) interest shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim, or any part thereof, becomes an Allowed Claim.

**Section 7.07 Method of Payment**.

All payments made pursuant to this Plan shall be by check or ACH or wire by the Liquidating Debtor.

**Section 7.08 Setoffs**.

Debtor or the Liquidating Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan on account of such Claim, claims of any nature whatsoever that Debtor, the Estate, or the Liquidating Debtor may have against such Holder of a Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor, the Estate, or the Liquidating Debtor of any such claim that Debtor may have against such Holder of a Claim.

**Section 7.09 Unclaimed Property**.

(a) Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within 90 days of their issuance, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property and (d) checks (and the funds

represented thereby) which are not mailed due to the lack of required tax identification information, but only following two mailed requests for this tax identification information.

(b) During the Claiming Period, Unclaimed Property shall be held solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released and delivered to such Holder upon presentation of proper proof by such Holder of its entitlement thereto.

(c) In the event that there is Unclaimed Property with regard to any Claim, the Liquidating Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, retain all subsequent Distributions due with regard to such Claim.

(d) After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied; provided, however, that the Claiming Period may be extended for the Holder of any Allowed Claim by agreement between the Holder of such Claim and the Liquidating Debtor. At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto and the Unclaimed Property shall become the property of the Liquidating Debtor pursuant to § 347(b) of the Bankruptcy Code.

(e) All parties entitled to participate in Distributions under this Plan shall be required to notify the Disbursing Agent in writing, in care of Debtor's undersigned counsel, of any change in the address to which Distributions are to be sent.

(f) These provisions shall apply without regard to any applicable non-bankruptcy laws with respect to unclaimed property.

**Section 7.10 Rounding**.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment made by the Liquidating Debtor may reflect a rounding of such fraction down to the nearest whole cent.

**Section 7.11 De Minimis Payments**.

The Liquidating Debtor will not issue payments under this Plan on account of any Claim for which the Distribution would equal $20.00 or less.

## ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 8.01 Rejection.**

**All executory contracts and unexpired leases of Debtor that have not been assumed, assumed and assigned, or rejected by Final Order entered before the Confirmation Date, are rejected as of the Effective Date. Debtor shall return the leased equipment to the applicable lessor on the same schedule as the surrender of Collateral under Section 5.03 of this Plan. Any Allowed Claim arising from such rejection, including any Allowed Claim for unpaid pre-rejection lease payments, shall be an Allowed Class 36 General Unsecured Claim. Any equipment or vehicle lease assumed by Debtor postpetition is rejected as of the Effective Date and may give rise to an administrative claim. The procedure for filing an administrative claim are in Section 9.09.**

**Section 8.02 Claims for Damages**.

Each person who is a party to an executory contract or unexpired lease rejected by Debtor during the pendency of this Bankruptcy Case but prior to confirmation of this Plan must file its claim for damages, including requests for payment of Administrative Claims, as stated in Section 8.03. Any Claim resulting from the rejection of an executory contract or unexpired lease not filed by the applicable deadline shall be forever barred and shall not be entitled to any Distributions under the Plan. Debtor shall have the right to object to any rejection damage Claim.

**Section 8.03 Bar Date for Rejection Damage Claims.**

**Any Claim arising from the rejection of an executory contract or unexpired lease under this Article VIII must be filed with the Bankruptcy Court and served on counsel for Debtor no later than ten (10) days after the Effective Date. Any such Claim not timely filed shall be forever barred and shall receive no Distribution under this Plan.**

## ARTICLE IX. ALLOWANCE OF CLAIMS

**Section 9.01 Allowed Claims**. An "Allowed" Claim for purposes of the Plan means any one of the following:

(a) If no objection is filed by Debtor or Liquidating Debtor to a proof of claim on or before the Claims Objection Deadline (as extended, if applicable), such Claim shall be deemed an Allowed Claim, of the type and in the amount set forth in such request or proof of claim; or

(b) If Debtor or Liquidating Debtor files an objection to such request or proof of claim, then such Claim shall be an Allowed Claim of the type and to the extent provided in (i) a subsequent Final Order of the Bankruptcy Court or (ii) a stipulation agreed upon by the Debtor or the Liquidating Debtor, and shall thereafter be treated in accordance with the provisions of such order or stipulation and the Plan.

**Section 9.02 Disallowed Claims**.

A Disallowed Claim is a Claim or any portion thereof that: (i) is not an Allowed Claim or a Disputed Claim, (ii) has been disallowed by a Final Order of the Bankruptcy Court; (iii) is listed in any of Debtor's Schedules at $0.00, unknown, contingent, disputed, or unliquidated and as to which no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court; or (iv) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim timely filed or deemed timely filed with the Bankruptcy Court.

**Section 9.03 Disputed Claims**.

A Disputed Claim is a Claim or any portion thereof that is not an Allowed Claim or a Disallowed Claim, and which is the subject of an objection timely filed with the Bankruptcy Court and which objection has not been withdrawn, settled, or overruled by a Final Order of the Bankruptcy Court.

**Section 9.04 Scheduled Claims**.

With respect to any claims against Debtor that are listed in Debtor's Schedules, and the Holder of such Claim has not filed a proof of claim, the following shall apply:

(a) If such claim is not shown in Debtor's Schedules as disputed, unliquidated, or contingent, and if Debtor has not filed an objection to said claim, then such claim shall be deemed an Allowed Claim, of the type and in the amount shown on such Schedules;

(b) If such claim is shown in Debtor's Schedules as disputed, contingent, and/or unliquidated, then such claim shall be a Disallowed Claim and disallowed in its entirety; or

(c) If such claim is not shown in Debtor's Schedules as disputed, unliquidated, or contingent, but Debtor has timely filed an objection to such claim, the claim shall be a Disputed Claim until such time that it becomes an Allowed Claim and/or a Disallowed Claim.

**Section 9.05 Claims Objection Deadline**.

All objections to Claims must be filed no later than the Claims Objection Deadline, subject to any extension granted by further order of the Bankruptcy Court.

**Section 9.06 Claims Allowed After the Effective Date**.

To the extent that any Claim becomes an Allowed Claim after the Effective Date, its Holder will be paid its Distribution in Cash in accordance with payments made to Allowed Claims in the same Class as the Allowed Claim after the Effective Date.

**Section 9.07 Resolution of Claims Objections**.

On and after the Effective Date, the Liquidating Debtor shall have the authority to compromise, settle, or withdraw any objections to Claims, or otherwise resolve any Disputed Claims, without further approval of the Bankruptcy Court**.**

**Section 9.08 Adjustment of Claims and Treatment**.

Debtor and the Liquidating Debtor shall be authorized, empowered, and permitted subsequent to the Confirmation Date to enter into an agreement or agreements with any creditor providing for payment or treatment of such creditor's Claim upon terms other than those provided in this Plan without further order of the Bankruptcy Court; provided, however, that no such agreement or agreements shall provide for payment or treatment of such creditor's Claim upon terms more favorable to such creditor than the payment or treatment provided for such creditor in this Plan.

**Section 9.09 Administrative Claims Bar Date**.

To the extent that any party asserts an Administrative Claim that has not been paid in full by the Effective Date, such party shall file a motion for allowance and payment of such Claim no later than the Administrative Claims Bar Date. Failure of any party to file such a motion by the Administrative Claims Bar Date shall entitle the Liquidating Debtor to presume that no such Claim exists and will result in any such Claim being forever barred, unless the Bankruptcy Court orders otherwise after notice and a hearing. The Administrative Claims Bar Date shall not apply to Professional Claims.

**Section 9.10 No Interest on Claims**.

Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post-petition agreement in writing between Debtor and a Holder, post-petition interest shall not accrue or be paid on any Claims, including any Disputed Claim that later becomes an Allowed Claim, and no Holder shall be entitled to any interest accruing on or after the Petition Date with respect to any Claim except as specifically provided in this Plan.

**Section 9.11 No Admissions; Objection to Claims**.

Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity designated as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Debtor to object to or examine any Claim for purposes of voting on the Plan shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

**Section 9.12 No Distributions Pending Allowance**.

Except as otherwise provided in the Plan, no Distributions will be made on account of any Claim or portion thereof that is a Disputed Claim unless and until such Claim becomes an Allowed Claim.

## ARTICLE X. CONDITIONS PRECEDENT

**Section 10.01 Conditions to Confirmation**. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 10.03 of this Plan:

(a) The Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in form and substance that is acceptable to the Debtor in its sole and absolute discretion; and

(b) The Confirmation Order shall have been signed by the Bankruptcy Court and entered on the docket of the Bankruptcy Case.

**Section 10.02 Conditions to the Effective Date**.

The following are conditions precedent to the occurrence of the Effective Date: the Confirmation Order shall not have been vacated, reversed, or modified and, as of the Effective Date, shall not be stayed.

**Section 10.03 Waiver of Conditions to Confirmation or Effectiveness**.

The conditions set forth in Section 10.01, as to Debtor, and Section 10.02 of this Plan, as to Debtor and Liquidating Debtor, may be waived, in whole or in part, by the Debtor without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or Effective Date may be asserted by the Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI. EFFECT OF PLAN CONFIRMATION

**Section 11.01 Binding Effect**.

Following confirmation by the Bankruptcy Court, the Plan shall be legally binding upon and inure to the benefit of the Debtor, the Estate, the Liquidating Debtor, the Holders of Claims, the Holders of Equity Interests, and their respective successors and assigns, even if they voted to reject the Plan.

**Section 11.02 Vesting of Property in Liquidating Debtor**.

Pursuant to 11 U.S.C. § 1141(b), confirmation of this Plan vests all remaining property of the Estate in the Liquidating Debtor as of the Effective Date. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in Liquidating Debtor as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and interests of creditors, except as specifically provided in the Plan.

**Section 11.03 Liquidating Debtor's Right to Wind Up Unsupervised.**

**As of the Effective Date, the Liquidating Debtor may surrender Collateral, collect the Accounts Receivable, compromise Claims and Causes of Action, make Distributions, and otherwise wind up its affairs without supervision by the Bankruptcy Court and free of any**

**restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order and the continuing obligation to pay fees of the Office of the United States Trustee and file reports until entry of a final decree.**

**Section 11.04 No Discharge.**

**This Plan is a plan of liquidation. Debtor will not engage in business after consummation of this Plan, and all or substantially all of the property of the Estate will be distributed or surrendered under this Plan. Accordingly, pursuant to § 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan does not discharge Debtor of any debt, and Debtor shall not receive a discharge. Notwithstanding the foregoing, and except as otherwise provided in this Plan or the Confirmation Order, the Distributions made under this Plan and the surrender of the Collateral, together with the treatment of any resulting deficiency as a Class 36 General Unsecured Claim as provided in Article IV of this Plan, shall be in full satisfaction of the Allowed Claims on account of which they are made, and no Holder of a Claim shall be entitled to any further Distribution from Debtor, the Estate, or the Liquidating Debtor.**

**Section 11.05 Injunction**.

The Confirmation Order shall act as an injunction during the term of this Plan. Except for actions expressly provided for in this Plan, such injunction bars any Person from commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim provided for under this Plan against Debtor or Liquidating Debtor or against any property of Debtor or Liquidating Debtor or any property otherwise pledged as collateral against such Claim provided for under this Plan in any jurisdiction whatsoever, except as provided for in this Plan. Such injunction shall survive the closure of the Bankruptcy Case and the Bankruptcy Court shall retain jurisdiction to enforce such injunction.

**Section 11.06 Exculpation.**

Subject to the occurrence of the Effective Date, Debtor and professionals retained for Debtor's Bankruptcy Case (collectively, the "**Exculpated Parties**") shall not have or incur any liability to any holder of a claim or equity interest in Debtor's Bankruptcy Case for any act or omission that occurred between and including the Petition Date through the Effective Date in connection with, related to, or arising out of, the drafting and negotiation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, the foregoing will not operate as a waiver or release for (i) willful misconduct, intentional torts, or gross negligence, and (ii) with respect to professionals retained for Debtor's Bankruptcy Case, liability arising from claims of professional negligence which will be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law; provided further that nothing in the Plan will, or will be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further the foregoing will not operate as a waiver or release of claims by governmental entities arising under environmental laws.

**Section 11.07 Exemption from Certain Transfer Taxes and Recording Fees**.

Pursuant to § 1146 of the Bankruptcy Code, any transfer from the Debtor or the Liquidating Debtor to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of the real or personal property held by the Debtor or Liquidating Debtor will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

**Section 11.08 Good Faith.**

Confirmation of the Plan shall constitute a finding that (a) the Plan has been proposed in good faith and in compliance with the provisions of the Bankruptcy Code and (b) the solicitation of acceptances or rejections of the Plan by all Persons and the offer, issuance, sale, or purchase of any security offered or sold under the Plan has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## ARTICLE XII. GENERAL PROVISIONS

**Section 12.01 Headings**. The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

**Section 12.02 Notices**. Any notice required or permitted to be provided to the Liquidating Debtor under the Plan shall be in writing and served by overnight courier service or by certified mail, return receipt requested, addressed as follows:

To Liquidating Debtor:
Southern Tree Professionals, LLC
Mr. Benjamin Ellis
2743 Orchard Knob, SE
Atlanta, GA 30339

with a copy to:
Ceci Christy
Rountree Leitman Klein & Geer, LLC
2987 Clairmont Road
Suite 350
Atlanta, GA 30329

Should either the Liquidating Debtor or its counsel's address change, the applicable party shall notify in writing creditors then receiving payments under the Plan.

**Section 12.03 Amendments and Modifications**.

This Plan may be altered, amended, or modified by Debtor at any time, subject, however, to § 1127 of the Bankruptcy Code.

**Section 12.04 Revocation of Plan**.

Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to the entry of the Confirmation Order, and upon such revocation and/or withdrawal, this Plan shall be deemed null and void and of no force and effect.

**Section 12.05 Conflicts with Disclosure Statement**.

In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

**Section 12.06 Retention of Property of the Estate**.

Except to the extent disposed of in accordance with the provisions of this Plan, the Liquidating Debtor shall retain all of the property of the Estate within the meaning of § 541 of the Bankruptcy Code.

**Section 12.07 Severability**.

If any section or provision of this Plan is found to be contrary to law or unenforceable, then at the option of the Liquidating Debtor, such section or provision shall be deemed no longer a part of this Plan.

**Section 12.08 Continuation of all Retiree Benefits**.

To the extent applicable to the Liquidating Debtor, all retiree benefits, as that term is defined in § 1114 of the Bankruptcy Code, shall be continued in accordance with § 1129(a)(13) of the Bankruptcy Code.

**Section 12.09 Tax Consequences**.

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Equity Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, no specific tax consequences to any Creditor or Holders of an Equity Interest are represented, implied, or warranted. The Plan Proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Equity Interest. Holders of Claims or

Equity Interests are strongly urged to consult their own tax advisors covering the federal, state, local, and/or foreign tax consequences of the Plan to their individual situation.

**Section 12.10 Applicable Law**.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

**Section 12.11 Retention of Jurisdiction by the Bankruptcy Court**. Until this Bankruptcy Case is closed and a final decree issued, the Bankruptcy Court shall retain jurisdiction over all matters arising out of or relating to this Bankruptcy Case, including, but not limited to, the following matters:

(a) To determine the allowance or classification of Claims or Equity Interests under this Plan and to determine any objections thereto;

(b) To construe and to take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution, and consummation of this Plan;

(c) To determine all applications for allowance of compensation or reimbursement of expenses;

(d) To determine any other request for payment of Administrative Claims;

(e) To resolve any dispute regarding the implementation or interpretation of this Plan;

(f) To determine any and all motions pending as of the Confirmation Date for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(g) To determine all applications, motions, adversary proceedings, contested matters and other litigated matters that may be pending in the Bankruptcy Court on or initiated after the Effective Date;

(h) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(i) To modify the Plan pursuant to § 1127 of the Bankruptcy Code, or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purpose;

(j) To enter an order or final decree closing this Bankruptcy Case;

(k) To determine matters under § 505 of the Bankruptcy Code relating to any tax for which the Liquidating Debtor may be liable;

(l) To consider and act on the compromise and settlement of any claim against the Debtor or Debtor-in-Possession or its Estate;

(m) To determine all questions and disputes regarding title to the assets of the Debtor, Debtor-in-Possession, the Estate, or the Liquidating Debtor; and

(n) To construe, enforce and resolve all questions and disputes relating to employment agreements existing or approved by the Bankruptcy Court at or prior to Confirmation.

**Section 12.12 Final Decree**.

The Bankruptcy Court may, upon application of the Liquidating Debtor, at any time after "substantial consummation" of the Plan as defined in § 1101(2) of the Bankruptcy Code, enter a final decree in the Bankruptcy Case, notwithstanding the fact that additional funds may eventually be distributed to parties-in-interest. In such event, the Bankruptcy Court may enter an order closing this Bankruptcy Case pursuant to § 350 of the Bankruptcy Code; provided, however, that (a) the Liquidating Debtor shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may, from time to time, reopen the Bankruptcy Case if appropriate for any of the following purposes: (i) administering Assets; (ii) entertaining any adversary proceedings, contested matters, or applications Debtor has brought or will bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (iii) enforcing or interpreting this Plan or supervising its implementation; or (iv) for other cause.

Dated: October 8, 2026 **ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Ceci Christy*__________
Ceci Christy
Georgia Bar No. 370092
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
cchristy@rlkglaw.com
*Counsel for Debtor*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing pleading through the Court's ECF system upon the following:

- **Thomas E. Austin** taustin@taustinlaw.com, klyons@taustinlaw.com
- **Lanie Bandell** lbandell@loriumlaw.com, GeorgiaFilings@loriumlaw.com
- **Ron C. Bingham** ron.bingham@arlaw.com, lianna.sarasola@arlaw.com
- **Ryan Burgett** ryan.burgett@huschblackwell.com, serena.gray@huschblackwell.com;ryan-burgett-4182@ecf.pacerpro.com
- **Jody Charles Campbell** jody@blumcampbell.com
- **Ceci Christy** cchristy@rlkglaw.com, wgeer@rlkglaw.com;willgeer@ecf.courtdrive.com;2836@notices.nextchapterbk.com;6717577420@filings.docketbird.com;dsideris@rlkglaw.com;lmassey@rlkglaw.com
- **Stephen P. Drobny** sdrobny@joneswalker.com, nkatsaras@joneswalker.com;miamiservice@joneswalker.com
- **London England** lengland@reedsmith.com
- **Ian M. Falcone** legalassistant@falconefirm.com;Falcone.IanB103925@notify.bestcase.com
- **Scott D Fink** bronationalecf@weltman.com, ksmith@weltman.com;sfink@weltman.com
- **Arielle Frank** afrank@fellab.com, zzelazny@fellab.com
- **Will B. Geer** wgeer@rlkglaw.com, dsideris@rlkglaw.com;willgeer@ecf.courtdrive.com;2836@notices.nextchapterbk.com;6717577420@filings.docketbird.com;lmassey@rlkglaw.com;cwilliams@rlkglaw.com;ecf_emails@rlkglaw.com
- **Brian Gipson** bgipson@ashenlaw.com
- **Anthony F. Giuliano** afg@glpcny.com, afg@ecf.courtdrive.com
- **Andrew D. Gleason** agleason@lrglaw.com
- **Tyler Henderson** tyler@stantonlawllc.com, heather.ard@stantonlawllc.com
- **Anna Mari Humnicky** ahumnicky@smallherrin.com, klemons@smallherrin.com;edesimone@smallherrin.com
- **A. Michelle Hart Ippoliti** Michelle.ippoliti@mccalla.com, bankruptcyecfmail@mccalla.com;mccallaecf@ecf.courtdrive.com
- **Bryan Scott Kaplan** bk@kaplanlawga.com, sagis@kaplanlawga.com
- **Charles N. Kelley** charles@charleskelley.law, tammy@charleskelley.law;Kelley.CharlesB154518@notify.bestcase.com
- **Benjamin S. Klehr** bklehr@smallherrin.com, klemons@smallherrin.com;kweindorf@smallherrin.com
- **Travis A. Knobbe** travisk@tklaw-ga.com
- **Steven M. Kushner** skushner@fellab.com, kconklin@fellab.com;asoro@fellab.com;e-filings@fellab.com;skushner@ecf.courtdrive.com;ktompkins@fellab.com;zzelazny@fellab.com

- **Matthew Joseph Lee** mjl@replevin.com, ecf@writofseizure.com
- **James W. Martin** james@jmartinlawatl.com
- **Garry Masterson** bronationalecf@weltman.com
- **Thomas T. McClendon** tmcclendon@joneswalden.com, jwdistribution@joneswalden.com;eterrell@joneswalden.com
- **Jeremy T. McCullough** jmccullough@jtm-law.com
- **Sean O'Donovan** sodonovan@bakerdonelson.com, mparris@bakerdonelson.com
- **Melanie C. Papadopoulos** mpapadopoulos@robbinsfirm.com
- **Jason L Pettie** jpettie@gordonpettie.com;pbicknell@gordonpettie.com
- **Scott B. Riddle** scott@scottriddlelaw.com, admin@scottriddlelaw.com
- **William A. Rountree** wrountree@rlkglaw.com, 6717577420@filings.docketbird.com;wgeer@rlkglaw.com;2836@notices.nextchapterbk.com;willgeer@ecf.courtdrive.com;emillerrlkg@ecf.courtdrive.com;dsideris@rlkglaw.com;cwilliams@rlkglaw.com;rjones@rlkglaw.com
- **Amin Sadri** asadri@Kaplanlawga.com
- **A. Todd Sprinkle** toddsprinkle@parkerpoe.com, wandaclay@parkerpoe.com;courtneyvolz@parkerpoe.com
- **Kevin A. Stine** kstine@bakerdonelson.com, smeadows@bakerdonelson.com;ali.lowe@bakerdonelson.com
- **C Brent Wardrop** brent.wardrop@qpwblaw.com
- **David S. Weidenbaum** david.s.weidenbaum@usdoj.gov
- **Daniel L. Wilder** dwilder@goodmanlaw.org, bkydept@goodmanlaw.org;bkydept5@goodmanlaw.org

This 8th day of September 2026.

*/s/ Ceci Christy*
Ceci Christy
Georgia Bar No. 370092